```
                    FILED
              CLERK, U.S. DISTRICT COURT
                   3/4/2026
              CENTRAL DISTRICT OF CALIFORNIA
              BY: _____KM_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2025 Grand Jury

| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>DAVID FERRERA and<br>MARC TILMAN,<br><br>　　　　Defendants. | CR 8:26-cr-00030-DOC<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to Violate the Foreign Corrupt Practices Act; 15 U.S.C. § 78dd-2: Foreign Corrupt Practices Act; 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. § 1956(a)(2)(A): International Promotional Money Laundering; 18 U.S.C. § 2: Aiding and Abetting; 18 U.S.C. § 981(a)(1)(C): Civil Forfeiture; 18 U.S.C. § 982(a)(1): Criminal Forfeiture] |
|---|---|

　　　The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.　　INTRODUCTORY ALLEGATIONS

　　　At times relevant to this Indictment:

　　　1.　　Defendant DAVID FERRERA was a United States citizen and a resident of Orange County, within the Central District of California. Defendant FERRERA was a "domestic concern" and an "officer,"

"employee," and "agent" of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2.

2. Defendant MARC TILMAN was a citizen and resident of Belgium. Defendant TILMAN was an "agent" of a "domestic concern" and a "person," as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2 and 78dd-3.

3. Medical Company #1, an entity, the identity of which is known to the Grand Jury, was a medical device company with its principal place of business in France.

4. Medical Company #2, an entity, the identity of which is known to the Grand Jury, was a medical device company incorporated in Delaware with its principal place of business in the Central District of California. Medical Company #2 was a wholly-owned subsidiary of Medical Company #1. Medical Company #2 previously did business as a California-based medical device company prior to its acquisition by Medical Company #1 in or around 2016 ("Medical Company #3"). Medical Company #2 sold medical devices, including "coils" used to treat brain aneurysms and other vascular conditions. Medical Company #2 was a "domestic concern," as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(l)(B).

5. Defendant FERRERA was a senior executive of Medical Company #2 and an owner of Medical Company #3.

6. Consulting Company was a company based in Belgium.

7. Defendant TILMAN owned and operated Consulting Company and was also an owner of Medical Company #3.

8. Pursuant to a merger agreement through which Medical Company #1 purchased Medical Company #3, defendants FERRERA and

TILMAN each stood to gain millions of dollars in milestone payments based on future sales of Medical Company #2 products.

9.  Centre Hospitalier Universitaire de Reims, including its hospital, Maison Blanche, was a French state-owned and state-controlled public university hospital ("CHU Reims"). CHU Reims was wholly owned and controlled by the government of France and performed a function that France treated as its own. CHU Reims was an "instrumentality" of a foreign government, and CHU Reims's officers and employees were "foreign officials," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2.

10.  Foreign Official, whose identity is known to the Grand Jury, was a citizen of France and an employee of CHU Reims. Foreign Official was a "foreign official," as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

B.  <u>OBJECTS OF THE CONSPIRACY</u>

11.  Beginning in or around 2017, and continuing until in or around September 2023, in the Central District of California and elsewhere, defendants FERRERA and TILMAN did knowingly conspire, confederate, and agree, together and with others known and unknown to the Grand Jury, to commit the following offenses against the United States:

a.  being a domestic concern and an officer, employee, and agent of a domestic concern (defendant FERRERA), and an agent of a domestic concern (defendant TILMAN), to willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to

3

give, and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her, or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her, or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities in order to assist defendant FERRERA, Medical Company #2, and others in obtaining and retaining business for and with, and directing business to, Medical Company #1, Medical Company #2, defendant FERRERA, defendant TILMAN, and others, in violation of Title 15, United States Code, Section 78dd-2(a); and

      b.    while in the territory of the United States, to willfully make use of the mails and means and instrumentalities of interstate commerce and to do any act corruptly in furtherance of an offer, payment, promise to pay and authorization of the payment of any money, offer, gift, promise to give and authorization of the giving of anything of value to a foreign official, to a foreign

political party and official thereof, and to a person while knowing that all and a portion of such money and thing of value would be offered, given and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her, or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her, or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities in order to assist MEDICAL COMPANY #1, defendant TILMAN, and others in obtaining and retaining business for and with, and directing business to, Medical Company #1, Medical Company #2, defendant FERRERA, defendant TILMAN, and others, in violation of Title 15, United States Code, Section 78dd-3(a).

C. <u>MANNER AND MEANS OF THE CONSPIRACY</u>

12. The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

    a. It was part of the conspiracy that defendants FERRERA and TILMAN, together and with others, would and did offer to pay, promise to pay, and authorize the payment of bribes, directly and indirectly, to and for the benefit of Foreign Official, in order to induce Foreign Official to use and cause CHU Reims to purchase

Medical Company #1's and Medical Company #2's medical devices — specifically, "coils" used to treat brain aneurysms and other vascular conditions.

   b. It was further part of the conspiracy that defendants FERRERA and TILMAN, together and with others, would and did cause Medical Company #2 to make payments to Consulting Company — through the use of sham consulting agreements, fake invoices, and purported bonus payments — for the purpose of paying bribes to Foreign Official.

   c. It was further part of the conspiracy that defendants FERRERA and TILMAN, together and with others, would and did take steps to conceal the scheme by, among other ways: (i) discussing the scheme via personal email accounts and encrypted messaging applications; (ii) using coded language to refer to bribes and bribe amounts, including terms such as "training" and "bonuses," and referring to Foreign Official as "our friend"; (iii) creating sham consulting agreements and fraudulent invoices to give the appearance of legitimacy to the bribe payments; and (iv) using Consulting Company to pay bribes, with money defendant TILMAN received from Medical Company #2, to Foreign Official into accounts in France held or beneficially controlled by Foreign Official.

D. <u>OVERT ACTS</u>

  13. On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants FERRERA and TILMAN, and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California, and elsewhere:

Overt Act No. 1: On June 17, 2017, defendant TILMAN messaged defendant FERRERA, "Regarding the €€ for our friend I have a plan. Call me whenever you can."

Overt Act No. 2: On June 30, 2017, defendant TILMAN messaged defendant FERRERA, "[Foreign Official] is ok to start asap."

Overt Act No. 3: On November 3, 2017, defendant TILMAN emailed defendant FERRERA, using their personal email accounts, with the subject line "[Foreign Official's first name]," and stating, "Using this private mail address for [Foreign Official's] subject. I owe him 200 euro's x 68 coils = 13600 euor's [sic]. The way i could invoice this to [Medical Company #2] could be : 'a 2 day sales and marketing session to a group of potential distributors in eastern Europe, which would include lodging, tavel [sic] expenses and of course a 2 days meeting' If you and/or [Medical Company #1 executive] would agree, i will send you an official mail to your [Medical Company #2] address , informing you guys about the program, the location , number of participants etc… so that you could approve this officially. What do you think?"

Overt Act No. 4: On November 3, 2017, defendant FERRERA, while in the Central District of California, emailed defendant TILMAN, in response to defendant TILMAN's email described in Overt Act No. 3 above, "That's acceptable. Please send this to me."

Overt Act No. 5: On March 5, 2018, defendant TILMAN emailed defendant FERRERA, "Think about this. Instead of 10K fixed salary and 30K bonus, let's do this: 18K fixed salary and 20K bonus, that i will fully allocate to [Foreign Official]. Would that work? No more fake 'trainigcourses' [sic]."

Overt Act No. 6: On April 26, 2018, defendant TILMAN emailed defendant FERRERA and stated, in part, "This new « bonus » is a CAMOUFLAGE, as we know for YOUR customers."

Overt Act No. 7: On January 14, 2019, defendant FERRERA caused Medical Company #2 to transfer approximately €25,000 from its bank account in the United States to Consulting Company's bank account in Belgium.

Overt Act No. 8: On January 18, 2019, defendant TILMAN caused Consulting Company to transfer approximately €25,000 from Consulting Company's bank account in Belgium to Foreign Official's personal bank account in France.

Overt Act No. 9: On April 15, 2019, defendant TILMAN messaged defendant FERRERA and stated, in part, "[Foreign Official] is busting my balls for the 25K."

Overt Act No. 10: On April 15, 2019, defendant TILMAN messaged defendant FERRERA and stated, in part, "IF [Medical Company #2 finance employee] DOES NOT WIRE THIS 25 K today i Will let [Foreign Official] know to stop everything."

Overt Act No. 11: On December 9, 2019, while defendant TILMAN was located in the United States, defendant TILMAN emailed an accountant for Consulting Company and requested the accountant to send two invoices to Medical Company #2: one for €13,500 and one for €25,000.

Overt Act No. 12: On September 7, 2023, defendant TILMAN caused Consulting Company to transfer approximately €25,000 from Consulting Company's bank account in Belgium to a bank account beneficially owned and controlled by Foreign Official in France.

COUNTS TWO AND THREE

[15 U.S.C. § 78dd-2, 18 U.S.C. § 2]

14. The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 10 of this Indictment here.

15. On or about the dates set forth below, in the Central District of California and elsewhere, defendants FERRERA and TILMAN, being a domestic concern and an officer, employee, and agent of a domestic concern (defendant FERRERA), and an agent of a domestic concern (defendant TILMAN), together and with others known and unknown to the Grand Jury, did willfully make use of, and aid, abet, and willfully cause others to make use of, the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her, or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her, or its influence with a foreign government and agencies and

instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist defendant FERRERA, Medical Company #2, and others in obtaining and retaining business for and with, and directing business to, Medical Company #1, Medical Company #2, defendant FERRERA, defendant TILMAN, and others, as set forth below:

| COUNT | DATE | MEANS AND INSTRUMENTALITIES OF INTERSTATE AND INTERNATIONAL COMMERCE |
|---|---|---|
| TWO | July 30, 2019 | A wire transfer of approximately €20,000, initiated by Medical Company #2 in the Central District of California, from Medical Company #2's bank account in the United States to Consulting Company's bank account in Belgium. |
| THREE | October 28, 2019 | A wire transfer of approximately €25,000, initiated by Medical Company #2 in the Central District of California, from Medical Company #2's bank account in the United States to Consulting Company's bank account in Belgium. |

COUNT FOUR

[18 U.S.C. § 1956(h)]

16. The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 10 of this Indictment here.

17. From in or around 2017, and continuing until at least in or around September 2023, in the Central District of California, and elsewhere, defendants FERRERA and TILMAN, together and with others known and unknown to the Grand Jury, did knowingly conspire, confederate, and agree to commit offenses under Title 18, United States Code, Section 1956, namely: to transport, transmit, and transfer monetary instruments and funds from a place in the United States to a place outside the United States, with the intent to promote the carrying on of one or more specified unlawful activities, that is:

    a. a felony violation of the Foreign Corrupt Practices Act, in violation of Title 15, United States Code, Sections 78dd-2(a) and 78dd-3(a); and

    b. one or more offenses against a foreign nation involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, in violation of the French Penal Code, as defined in Title 18, United States Code, Section 1956(c)(7)(B)(iv), contrary to Title 18, United States Code, Section 1956(a)(2)(A).

## COUNTS FIVE AND SIX
[18 U.S.C. §§ 1956(a)(2)(A), 2]

23. The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 10 of this Indictment here.

24. On or about the dates set forth below, in the Central District of California and elsewhere, defendants FERRERA and TILMAN, together and with others known and unknown to the Grand Jury, did knowingly transport, transmit, and transfer, and aid, abet, and cause others to transport, transmit, and transfer, the following monetary instruments and funds from a place in the United States to a place outside the United States, namely Belgium, intending that each of the transactions, in whole and in part, promote the carrying on of a specified unlawful activity, that is:

    a. a felony violation of the Foreign Corrupt Practices Act, in violation of Title 15, United States Code, Sections 78dd-2(a) and 78dd-3(a); and

    b. one or more offenses against a foreign nation involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, in violation of the French Penal Code, as defined in Title 18, United States Code, Section 1956(c)(7)(B)(iv), as follows:

| COUNT | DATE | MEANS AND INSTRUMENTALITIES OF INTERSTATE AND INTERNATIONAL COMMERCE |
|---|---|---|
| FIVE | January 31, 2020 | A wire transfer of approximately €25,000, initiated by Medical Company #2 in the Central District of California, from Medical Company #2's bank account in the United States to Consulting Company's bank account in Belgium. |
| SIX | April 21, 2020 | A wire transfer of approximately €38,500, initiated by Medical Company #2 in the Central District of California, from Medical Company #2's bank account in the United States to Consulting Company's bank account in Belgium. |

|     |                                                                                   |
| --- | --------------------------------------------------------------------------------- |
| 1   | FORFEITURE ALLEGATIONS                                                            |
| 2   | [18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1)]                                         |

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, DAVID FERRERA and MARC TILMAN, have an interest.

2. Upon conviction of a violation of Title 15, United States Code, Section 78dd-2, or a conspiracy to commit such an offense, as alleged in this Indictment, the defendants, DAVID FERRERA and MARC TILMAN, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. Upon conviction of a violation of Title 18, United States Code, Section 1956, or a conspiracy to commit such an offense, as alleged in this Indictment, the defendants, DAVID FERRERA and MARC TILMAN, shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4. The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a forfeiture money judgment that represents the amount of proceeds obtained by defendant from the alleged offense.

5. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

        (a)   cannot be located upon the exercise of due diligence;

        (b)   has been transferred or sold to, or deposited with, a third party;

        (c)   has been placed beyond the jurisdiction of the court;

        (d)   has been substantially diminished in value; or

        (e)   has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

    All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

                                    A TRUE BILL

                                    /S/
                                    FOREPERSON

_____
LORINDA I. LARYEA
Chief, Fraud Section
Criminal Division
United States Department of Justice

_____
PATRICK S. BROWN
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice